| | |
|---|---|
| WILLIAM J. CORR, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:03-0909 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| STEVEN CLARKE AKERS and ) | |
| WILLIAM E. SMITH TRUCKING, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

Pending before the court is the plaintiff's Motion in Limine to Strike and Exclude Defendant's Affirmative Defense of Comparative Fault Against the Phantom Vehicle (Docket No. 32), to which the defendants have responded (Docket No. 35) and the plaintiff has replied (Docket No. 36). For the reasons discussed herein, the plaintiff's motion will be denied .

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from an October 5, 2002 automobile collision that occurred on Briley Parkway North in Nashville, TN.[1] The collision involved four vehicles: (1) a Kentworth T-600 tractor hauling an empty trailer and driven by the plaintiff, William J. Corr, a citizen of Pennsylvania; (2) a "fully loaded" Peterbilt tractor-trailer driven by one of the defendants, Steven C. Akers, a citizen of West Virginia, and owned by the other, William E. Smith Trucking, Inc. (hereinafter "Smith Trucking"), a citizen of North Carolina; (3) a Mitsubishi Eclipse driven by Ria

---

[1]Unless otherwise noted, all facts have been drawn from the positional statements of the parties, as provided in the Case Management Order. (Docket No. 12)

1

Horstman, who is not a party to this action; and (4) the "phantom vehicle," a white station wagon whose driver and owner remain unknown. (Docket No. 33 at 1-2; Docket No. 1 ¶ 3-6)

In the moments leading up to the collision, Horstman, Akers, and the plaintiff each were proceeding west along Briley Parkway North. The plaintiff was situated in the right lane, Horstman was to his left, and Akers was behind Horstman. As the three drivers approached the ramp connecting Gallatin Pike to the parkway, the phantom vehicle merged into the traffic on the parkway from the ramp, cutting directly in front of the plaintiff. In order to avoid a collision, the plaintiff "locked" his brakes and veered to his left.

The plaintiff's statements as to how far left he moved vary. In his Complaint, he alleged that he moved into a "portion" of the left lane (Docket No. 1 ¶ 28), while in his Memorandum in Support of his Motion in Limine (referring to deposition testimony), he asserted that "his vehicle did not merge further than the center line" (Docket No. 33 at 3). In any case, both parties agree that the plaintiff's shift to the left caused Horstman to brake suddenly and that Akers, who was behind Horstman, subsequently ran into the back of both Horstman's vehicle and that of the plaintiff. The phantom vehicle, which had not been hit, continued down Briley Parkway North.

The plaintiff subsequently brought suit against both Akers and Smith Trucking. He alleged that Akers had negligently operated the vehicle owned by Smith Trucking and, as such, had caused the plaintiff personal and property damage. (Docket No. 1 ¶ 37-39) The plaintiff also claimed that, in addition to being liable for Akers's actions via *respondeat superior* and other principles, Smith Trucking had negligently failed to maintain its vehicle and had negligently entrusted that vehicle to Akers. (*Id.* ¶ 44-45)

In their Answer, the defendants asserted an affirmative defense of comparative negligence on the part of the phantom vehicle, whose driver allegedly proximately caused or contributed to the collision when he entered Briley Parkway North in the direct path of the plaintiff. (Docket No. 11,

Affirmative Defenses ¶ 2)  The plaintiff has filed a motion in limine to strike and exclude this affirmative defense.  (Docket No. 32)

## ANALYSIS

In 2000, the Tennessee Supreme Court held that a defendant, in asserting an affirmative defense of comparative negligence, may not apportion fault to a nonparty unless the nonparty has been identified in a manner that allows a plaintiff to plead and serve process on the nonparty in accordance with state law.  *Brown v. Wal-Mart Disc. Cities*, 12 S.W.3d 785, 789 (Tenn. 2000).  The Tennessee Court of Appeals subsequently adapted this holding to address the unique set of facts presented by automobile collisions that involve phantom vehicles.  In *Breeding v. Edwards*, that court held that a defendant could attribute fault to a nonparty phantom vehicle when the plaintiff could, under the Tennessee uninsured motorist statutes, hale his insurance carrier into court and hold it liable for the negligent acts of the phantom vehicle.  62 S.W.3d 170, 175 (Tenn. Ct. App. 2002).  In making this decision, the court reasoned that the policy behind the *Brown* decision, namely, allowing a plaintiff to ward off a defendant's attempt to impose fault on a party who could not be cast into the judgment, did not apply in a case where the plaintiff could recover from his insurance carrier based on the phantom vehicle's negligence.  *Id.* at 174.

It should be noted that Tennessee's uninsured motorist statutes allow a plaintiff to recover for damages caused by an unknown motorist without requiring the plaintiff to identify the unknown motorist or prove that the unknown motorist was uninsured.  *See Breeding*, 62 S.W.2d at 176; *see also* Tenn. Code Ann. § 56-7-1206(b) (2005) (delineating the requirements for making a claim against an unknown motor vehicle operator or owner).  The Court of Appeals in *Breeding* explicitly limited its holding to cases falling under these Tennessee statutes.  62 S.W.3d at 174 n. 3 ("We do not need to decide in this case if the holding in *Brown* is applicable to a factual scenario involving

3

an unknown motor vehicle driver where the uninsured motorist statutory scheme is not involved.").

In the case at hand, both parties agree that the Tennessee uninsured motorist statutes do not apply. (*See* Docket No. 33 at 10 ("In the instant case, there is no question that Tennessee's uninsured motorist statute is 'not involved.'"); Docket No. 35 at 5 ("Plaintiff argues that the Tennessee uninsured motorist statute is 'not involved' in the present litigation. That point is conceded.")) The defendants direct the court to look, instead, to Pennsylvania law, as the law of the plaintiff's home state, to determine whether the plaintiff could recover from his insurance carrier in such a way as to allow the defendants to assert a comparative negligence defense after *Breeding*. While the defendants claim that Pennsylvania law would allow the plaintiff to recover for any injuries caused to him by the phantom vehicle,[2] the plaintiff maintains that he "does not have a cause of action via an uninsured motorist claim against the phantom vehicle under any state law," Pennsylvania or otherwise (Docket No. 36 at 4).

Under Pennsylvania law, a claimant driver may recover from his insurance carrier for damages caused by a traffic accident with a phantom vehicle when he is able to demonstrate (1) that he reported the accident to the police or proper government authority; and (2) that he notified his insurer that he had a legal action arising out of the accident within thirty days, or as soon as practicable thereafter. *See* 75 Pa. Cons. Stat. Ann. §§ 1702 (defining "uninsured motor vehicle"), 1731 (mandating that uninsured motorist coverage be made available as part of all Pennsylvania liability insurance policies and that such coverage "shall provide protection for persons who suffer injury arising out of the . . . use of a vehicle and [who] are legally entitled to recover damages

---

[2] Defendants would have this court rely on the uninsured motorist provisions of 40 Pa. Cons. Stat. Ann. § 2000 (2005). Although that entire statute was not "repealed more than 20 years ago," as the plaintiffs have asserted (Docket No. 36 at 2), the portion of that statute that is relevant to the court's analysis has been superseded by 75 Pa. Cons. Stat. Ann. §§ 1702, 1731 (2005). *See* 1990 Pa. Legis. Serv. § 31 (West) ("All other acts and parts of acts are repealed insofar as they are inconsistent with this act.").

4

therefor from owners or operators of uninsured motor vehicles") (2005); *see also Jackson v. Pa. Fin. Responsibility Assigned Claims Plan*, 575 A.2d 626 (Pa. Super. Ct. 1990) (evaluating whether claimant had properly reported the accident to insurance carrier and police to determine whether he could recover from his insurance carrier for damage caused by a phantom vehicle).

Pennsylvania courts have resisted efforts to require any more strenuous a showing from a plaintiff who hopes to recover from his insurance carrier. *See Kiker v. Pa. Fin. Responsibility Assigned Claims Plan*, 742 A.2d 1082, 1089 (Pa. Super. Ct. 1999) ("[I]n accord with [the Pennsylvania Motor Vehicle Financial Responsibility Law's] goal of establishing a liberally compensatory scheme and underinsured motorist protection, this Court has explicitly held that, to meet the requirements of Section 1702, a claimant [who has informed his insurance carrier of his accident and his claims arising therefrom] need only report the accident to the police, and nothing more.") (internal citations omitted); *Pak v. Allstate Ins. Co.*, 15 Pa. D & C.4th 514, 519 (Pa. Com. Pl. 1992) (striking down provision of insurance policy that required claimant to demonstrate factors beyond his reporting of the incident to police and to his insurance carrier).

Accordingly, this court finds that Pennsylvania law does not restrict a claimant driver's ability to recover from his insurance carrier in such a way as to preclude the defendant in this case from asserting a comparative negligence defense after *Brown* and *Breeding*. As detailed above, *Breeding* allows a defendant to circumvent *Brown's* requirement that a nonparty be identified before a claim of comparative negligence is asserted against it *if* the plaintiff can recover from his insurance carrier for any claims he may have against the nonparty, absent such identification. *Breeding*, 62 S.W.2d at 175. Here, Pennsylvania statutes allow a plaintiff driver to recover for such claims without ascertaining the identity of the nonparty phantom vehicle as long as he has reported the accident to the police and to his insurance carrier.

The papers related to this motion do not reveal any information about the plaintiff's

5

insurance policy or whether he did, in fact, make a claim under this policy in such as manner as to allow him to recover for any damage caused by the phantom vehicle. Such facts, however, are immaterial, as the proper inquiry is not whether a claimant had uninsured motorist coverage under which he was able to make a successful claim, but rather whether such coverage was available to him. *See Marler v. Scoggins*, 105 S.W.3d 596, 601 (Tenn. Ct. App. 2002) (noting that the correct question after *Breeding* is not whether the plaintiff actually *did* serve her insurance carrier with a claim, but rather whether she had a statutory *right* to do so).

Thus, regardless of whether the plaintiff actually submitted a claim to--and recovered damages from--his insurance carrier based on any damage caused by the phantom vehicle, the fact that Pennsylvania law gives the plaintiff the right to recover for such damages necessarily allows the defendant to claim that the driver of the phantom vehicle was comparatively negligent. Accordingly, the plaintiff's motion to strike this defense must be denied.

## CONCLUSION

For the reasons stated herein, the plaintiff's Motion in Limine (Docket No. 32) is DENIED.

_____
ALETA A. TRAUGER
United States District Judge

6